No. _____

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

FRANK BIEDERMAN, ET AL.,

*Plaintiffs-Petitioners,*

vs.

FCA US LLC AND
CUMMINS INC.,

*Defendants-Respondents.*

Appeal from the United States District Court
for the Northern District of California
The Honorable Jacqueline Scott Corley, Case No. 23-cv-06640-JSC

## PETITION FOR INTERLOCUTORY APPEAL
## PURSUANT TO 28 U.S.C. § 1292(b)

Elizabeth J. Cabraser
Kevin Budner
Phong-Chau G. Nguyen
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
ecabraser@lchb.com
kbudner@lchb.com
pgnguyen@lchb.com

David S. Stellings
Miranda K. Litwak
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
dstellings@lchb.com
mlitwak@lchb.com

*Attorneys for Plaintiffs-Petitioners*

3230632.4

## CORPORATE DISCLOSURE STATEMENT

No corporation is a petitioner in this case. Therefore, no corporate disclosure statement is required under Rule 26.1 of the Federal Rules of Appellate Procedure.

3230632.4

# TABLE OF CONTENTS

**Page**

BACKGROUND AND SUMMARY OF ARGUMENT.......................................1

QUESTION PRESENTED .............................................................5

ARGUMENT................................................................................5

I.    Whether the indirect purchaser rule applies to RICO is a controlling question of law.................................................................6

II.    Fair-minded jurists can and do disagree on whether the indirect purchase rule applies to RICO. ................................................7

    A.    Courts are divided on the issue.........................................8

    B.    The Supreme Court has repeatedly refused to graft onto RICO limiting doctrines developed in other areas of law, particularly antitrust.................................................................10

    C.    Support for the other side is "equivoca[l]." ......................13

III.    Prompt review may materially advance the termination of this action........14

    A.    Absent appeal, the nationwide class will be splintered into suits across the country that will change and delay the litigation.............15

    B.    An early appeal will reduce the potential for a costly second trial. ......................................................................16

    C.    Certainty regarding the RICO claim will facilitate settlement— the most likely outcome for any civil litigation. .............................17

CONCLUSION .................................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Cnty. Of Sacramento*,
2023 WL 3413672 (E.D. Cal. May 12, 2023), *petition granted*,
No. 23-80042 (9th Cir. Jun. 28, 2023)................................................................7

*Anza v. Ideal Steel*,
547 U.S. 451 (2006)..............................................................................................11

*Assoc. of Irritated Residents v. Fred Schakel Dairy*,
634 F. Supp. 2d 1081 (E.D. Cal. 2008) .............................................................6

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020)..............................................................................................10

*In re Brand Name Prescription Drugs Antitrust Litig.*,
1996 WL 267752 (N.D. Ill. May 17, 1996), *rev'd on other
grounds*, 123 F.3d 599 (7th Cir. 1997) .............................................................15

*Carter v. Berger*,
777 F.2d 1173 (7th Cir. 1985).............................................................................13

*Casas v. Victoria's Secret Stores, LLC*,
2015 WL 13446989 (C.D. Cal. Apr. 9, 2015), *petition granted*,
No. 15-80069 (9th Cir. Jul. 30, 2015) ...............................................................18

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981)........................................................................5, 6

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods.
Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018)...............................................................12

*E.E.O.C. v. Bass Pro Outdoor World, LLC*,
2014 WL 6453606 (S.D. Tex. Nov. 17, 2014), *petition granted*,
No. 14-90044 (5th Cir. Feb. 10, 2014) ..............................................................16

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Elorreaga v. Rockwell Automation, Inc.*,
2023 WL 4116623 (N.D. Cal. June 16, 2023), *petition granted*,
No. 23-80056 (9th Cir. Jul. 24, 2023) ............................................. 16

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. &*
*Antitrust Litig.*,
336 F. Supp. 3d 1256 (D. Kan. 2018) ............................................. 8

*Fenner v. Gen. Motors, LLC*,
113 F.4th 585 (6th Cir. 2024) ......................................................... 13

*Finder v. Leprino Foods Co.*,
2016 WL 4095833 (E.D. Cal. Aug. 1, 2016), *petition granted*,
No. 16-80104 (9th Cir. Oct. 19, 2016) ............................................. 18

*Gillespie v. Centerra Servs. Int'l, Inc.*,
2022 WL 18584762 (C.D. Cal. Oct. 26, 2022), *petition granted*,
No. 22-80128 (9th Cir. Jan. 27, 2023) ............................................. 7

*GolTV, Inc. v. Fox Sports Latin Am., Ltd.*,
2018 WL 1393790 (S.D. Fla. Jan. 26, 2018) .................................... 8

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) ......................................................................... 10

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) ............................................................................. 11

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ............................................................. 11, 13, 14

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ............................................... 6, 7, 15

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ................................................................. *passim*

*J & M Turner, Inc. v. Applied Bolting Tech. Prods., Inc.*,
1997 WL 83766 (E.D. Pa. Feb. 19, 1997) ................................... 9, 13

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990)....................................................................4

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996)..................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)............................................................................10

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
921 F. Supp. 2d 1059 (D. Haw. 2013), *petition granted*,
No. 13-80018 (9th Cir. Apr. 1, 2013).................................................7

*McCarthy v. Recordex Serv., Inc.*,
80 F.3d 842 (3d Cir. 1996)..............................................................9, 13

*Med. Marijuana, Inc. v. Horn*,
145 S. Ct. 931 (2025)...............................................2, 11, 12, 14

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163 (9th Cir. 2002)............................................................12

*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 2022
WL 3155035 (S.D. Fla. July 21, 2022), *report and recommendation adopted*, 2022 WL 4448256
(S.D. Fla. Sept. 23, 2022)...................................................................9

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
130 F.4th 91 (4th Cir. 2025).........................................................3, 4, 14

*In re N. Dist. of California "Dalkon Shield" IUD Prods. Liab. Litig.*,
526 F. Supp. 887 (N.D. Cal. 1981), *petition granted*,
693 F.2d 847 (9th Cir. 1982)..............................................................18

*In Re: Oral Phenylephrine Marketing and Sales Practices Litig.*,
No. 24-3296, Dkt. 90.1 (2d Cir. Mar. 26, 2025)................................4

3230632.4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Pac. Homes*,
  456 F. Supp. 851 (C.D. Cal. 1978), *petition granted*,
  611 F.2d 1253 (9th Cir. 1980)..................................................................16

*Parker v. Cnty. of Riverside*,
  2022 WL 2204146 (C.D. Cal. May 5, 2022), *petition granted*,
  No. 22-80041 (9th Cir. June 23, 2022)...............................................7

*PharmacyChecker.com LLC v. LegitScript LLC*,
  2024 WL 982784 (D. Or. Mar. 7, 2024), *petition granted*,
  No. 24-1634 (9th Cir. Apr. 29, 2024)..................................................8

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)...................................................*passim*

*Rollins v. Dignity Health*,
  2014 WL 6693891 (N.D. Cal. Nov. 26, 2014), *petition granted*,
  No. 14-80177 (9th Cir. Feb. 26, 2015).........................................7, 18

*S.E.C. v. Mercury Interactive, LLC*,
  2011 WL 1335733 (N.D. Cal. Apr. 7, 2011)........................................18

*Scheid v. PNC Bank, N.A.*,
  2022 WL 17430306 (9th Cir. Dec. 6, 2022).........................................6

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)...........................................................................11

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012)..............................................................18

*T.P. by & through S.P. v. Walt Disney Parks & Resorts U.S., Inc.*,
  445 F. Supp. 3d 665 (C.D. Cal. 2020)..................................................9

*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004)..............................................................13

*United States v. Woodbury*,
  263 F.2d 784 (9th Cir. 1959)................................................................6

vi

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.*
   *Litig.,*
   349 F. Supp. 3d 881 (N.D. Cal. 2018) ............................................................. 13

**Statutes**

18 U.S.C. § 1961(1) ............................................................................................. 12

18 U.S.C. § 1964(c) ......................................................................................... 2, 10

28 U.S.C. § 1292(b) ..................................................................................... *passim*

3230632.4

## BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiffs-Petitioners respectfully seek interlocutory review under 28 U.S.C. § 1292(b) of the District Court's order dismissing their claim against Cummins Inc. ("Cummins" or "Defendant") under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Dkt.[1] 95, Ex. 1 ("Dismissal Order").

In the operative complaint (Dkt. 75), Plaintiffs allege that Cummins and its co-Defendant FCA US LLC ("FCA") conspired to install emissions-cheating "defeat devices" in hundreds of thousands of Ram trucks and to dupe Plaintiffs and the proposed Class into purchasing the over-polluting vehicles. These allegations, bolstered by the record-breaking $1.88 billion dollar fine Cummins paid the government for the underlying conduct, gave rise to a number of state-law claims and one federal RICO claim. Dkt. 75 ¶¶ 5, 208-393.

On Cummins' motion, the District Court dismissed the RICO claim based on the bright-line "indirect purchaser rule" announced in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Ex. 1 at 2-6. Historically, that rule has precluded antitrust plaintiffs from bringing suit when an intermediate purchaser sits between them and the antitrust violator. In this case, everyone agrees that Plaintiffs are, in the antitrust sense, "indirect" because they purchased their vehicles not from Cummins

---

[1] "Dkt." refers to the District Court docket below.

(or its co-conspirator, FCA) but from FCA's dealers. The dispute is whether the antitrust indirect purchaser rule applies to RICO at all.

The District Court held that it does. Because they share some identical language, the District Court reasoned, "RICO and the Clayton Act must be interpreted the same, and therefore, indirect purchasers" who "may not sue" under antitrust laws may not sue under RICO either. Ex. 1 at 4. Even as she "was making this ruling," however, the District Judge "was thinking in [her] head this would be a great issue for interlocutory appeal." Dkt. 123 (May 1, 2025, Hr'g Tr.), Ex. 3 at 17:11-13. This became even more clear when, just a few weeks later, the Supreme Court rejected the precedential value of antitrust authority in interpreting RICO's injury requirement because, put simply, "the Clayton Act and § 1964(c) [RICO] are not 'interchangeable.'" *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 942-43 (2025).

With this in mind, and as the District Court later confirmed, the Dismissal Order clearly presents a (1) "controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) the resolution of which "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

**The Dismissal Order presents a controlling question of law.** "The parties do not dispute the Order presents a pure question of law regarding the applicability

of *Illinois Brick* to 18 U.S.C. § 1964(c)." Dkt. 121 (Certification Order), Ex. 2 at 5. If more is required, the analysis is co-extensive with the third prong, below.

**There are substantial ground for difference of opinion**. "While th[e District] Court ultimately concluded the *Illinois Brick* indirect-purchaser rule applies to civil RICO," it also held that "reasonable jurists might disagree on the issue's resolution." Ex. 2 at 7. For proof, one need look only to the many opinions that have already disagreed on this very point. *See* § II.AII.A *infra*. Those decisions find support in a long line of Supreme Court precedent rejecting efforts to import into RICO narrowing doctrines developed in other areas of law. *See* § II.B, *infra*. As those cases make clear, in the unique context of RICO, directness considerations must be addressed through the "flexible" proximate causation test, not the bright-line indirect purchaser rule. *Id.*

It is true that some other courts have taken "diverging views," but that simply underlines the obvious: reasonable jurists can and do disagree on this "complicated question." *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 110 n.11 (4th Cir. 2025). No more is needed to satisfy § 1292(b).

**Prompt appeal may materially advance the termination of the litigation.** An early appeal "'may materially advance' the litigation by circumventing the need for a new trial in the event of reversal." Ex. 2 at 9. Without RICO, there is no federal claim or nationwide class remaining. What was once a fifty-state case,

becomes a one-state case, and one without treble damages. Appellate clarity on this critical claim thus has the potential to "drastically reshape" the proceedings below (*id.* at 5), and significantly influence the probability for negotiated resolution. *See* § III.

Stepping back, moreover, this issue presents a question of great importance not just for this case, but for the development of the law generally. This Circuit has not yet directly confronted the issue, but others have, and more are coming. The Fourth Circuit addressed it just a few months ago, *MSP Recovery*, 130 F.4th at 110, and the Second Circuit is facing it currently in *In Re: Oral Phenylephrine Marketing and Sales Practices Litig.*, No. 24-3296, Dkt. 90.1 (2d Cir. Mar. 26, 2025). This makes sense—RICO is a powerful, federal claim with the potential to significantly impact the shape of litigation. Lots of cases will look a lot different if, as the District Court held, a bright-line standing rule deprives the direct victims of a RICO-violative scheme of standing simply because another party is ahead of them in a purchasing chain.

As at least one other Circuit has concluded, "the impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). To the extent that

4

this Court is inclined to "consider the system-wide costs and benefits," *id.*, they too strongly favor this appeal.

For all these reasons, and as the District Court correctly concluded, the Dismissal Order is a "perfect" candidate for interlocutory review. Ex. 3 at 15:1-2. Plaintiffs-Petitioners respectfully request that this Court so certify.

## QUESTION PRESENTED

The substantive issue presented in the proposed appeal is whether the bright-line indirect purchaser rule announced in *Illinois Brick* should be imported from antitrust to Civil RICO, or whether the relevant directness considerations should instead be analyzed under RICO's more "flexible" proximate causation standard. The procedural question presented in this petition is whether the Dismissal Order satisfies the conditions for interlocutory appeal under 28 U.S.C. § 1292(b). It does.

## ARGUMENT

This Court may permit the appeal of an otherwise non-final order if it finds: "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (quoting 28 U.S.C. § 1292(b)). As the District Court properly held, all three criteria are met here. Ex. 2 at 4-10. While not binding on this Court, the District Court's analysis of the § 1292(b) factors "deserv[es]

careful consideration." *United States v. Woodbury*, 263 F.2d 784, 786 (9th Cir. 1959); *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (same).

## I. Whether the indirect purchaser rule applies to RICO is a controlling question of law.

The relevant facts are not in dispute: Plaintiffs purchased their Class Vehicles not from Cummins (or their alleged co-conspirator, FCA) but from FCA's authorized dealerships. The only dispute is whether that uncontested fact categorically precludes Plaintiffs, as "indirect" purchasers, from bringing a claim under RICO. As the District Court observed, and as Cummins effectively concedes, that is "a pure legal question that is untethered to the facts." Ex. 3 at 14:23-15:9; *see also id.* at 17:15. Nothing more is needed to satisfy this first factor. *Scheid v. PNC Bank, N.A.*, 2022 WL 17430306, at *1 (9th Cir. Dec. 6, 2022) (first criterion established where appeal presented "pure question of law").

To the extent the "controlling" language adds an additional hurdle, however, Plaintiffs clear it. A controlling question of law need not "determine[] who will win on the merits," *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318-19 (9th Cir. 1996), or even "shorten the time, effort, or expense of conducting a lawsuit." *In re Cement Antitrust Litig.*, 673 F.2d at 1026-27; *see also Assoc. of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1092 (E.D. Cal. 2008) (controlling question need not "dispose of the litigation"). The resolution of the issue need only

6

"materially affect the outcome of litigation in the district court." *ICTSI Oregon*, 22 F.4th at 1130. As discussed in § III, *infra*, that is certainly the case here.

## II. Fair-minded jurists can and do disagree on whether the indirect purchase rule applies to RICO.

There is "substantial ground for difference of opinion" as to whether the bright-line indirect purchaser rule announced in *Illinois Brick* applies to RICO. To meet this standard, "there does not need to be a circuit split" on the issue—the standard Cummins advanced and the District Court rejected below. Ex. 2 at 8. Indeed, there can be a "credible basis for a difference of opinion" even if no "contradictory precedent" yet exists. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).[2] Thus, to satisfy this prong, Plaintiffs need only show that "reasonable jurists might disagree on the issue's resolution." *Id.* They do.

---

[2] Following this Court's guidance, district courts in this Circuit regularly certify complex questions like this one, even without a circuit split. *See, e.g.*, *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1067 (D. Haw. 2013), *petition granted*, No. 13-80018 (9th Cir. Apr. 1, 2013) (substantial ground prong met where district courts reached different conclusions); *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014), *petition granted*, No. 14-80177 (9th Cir. Feb. 26, 2015) (holding that "[o]ne of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed," and certifying for appeal based only on district court disagreement); *Gillespie v. Centerra Servs. Int'l, Inc.*, 2022 WL 18584762, at *2 (C.D. Cal. Oct. 26, 2022), *petition granted*, No. 22-80128 (9th Cir. Jan. 27, 2023) (substantial ground prong met where district courts reached opposite conclusions); *Adams v. Cnty. Of Sacramento*, 2023 WL 3413672, at *1 (E.D. Cal. May 12, 2023), *petition granted*, No. 23-80042 (9th Cir. Jun. 28, 2023) (substantial ground prong met where Ninth Circuit had not yet decided the issue); *Parker v. Cnty. of Riverside*, 2022 WL 2204146, at *3 (C.D. Cal. May 5, 2022),

**A.      Courts are divided on the issue.**

Reasonable jurists can and already have disagreed with the District Court's application of the indirect purchaser rule to RICO. To cite a few examples, in *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, the court squarely rejected the contention that "the class plaintiffs—as indirect purchasers—lack standing to assert a RICO claim." 336 F. Supp. 3d 1256, 1324 (D. Kan. 2018). Instead, the court observed, Supreme Court precedent instructs that proximate causation alone (and *not* the "black-letter" indirect purchaser rule) "suffice[s] to confer RICO standing." *Id.* at 1324-25. "[A]pplying the indirect-purchaser rule [to RICO] is," therefore, "contrary to the Supreme Court's decision in *Bridge* [*v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)]." *In re: EpiPen*, 336 F. Supp. 3d at 1324.

Similarly, in *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, the court held that "the standard for RICO standing is a determination of proximate cause," *not* the "indirect purchaser doctrine for antitrust standing." 2018 WL 1393790, at *19 (S.D. Fla. Jan. 26, 2018). Cummins made no effort to distinguish either decision

---

*petition granted*, No. 22-80041 (9th Cir. June 23, 2022) (substantial ground prong met where district courts in the circuit reached different opinions and Ninth Circuit had not decided the issue); *PharmacyChecker.com LLC v. LegitScript LLC*, 2024 WL 982784, at *6 (D. Or. Mar. 7, 2024), *petition granted*, No. 24-1634 (9th Cir. Apr. 29, 2024) ("[R]easonable jurists can (and have) disagreed" where only one district court out of circuit disagreed, and the Ninth Circuit had not decided the issue.).

below, both of which squarely conflict with the Dismissal Order Plaintiffs seek to appeal.

These are not the only examples. In *J & M Turner, Inc. v. Applied Bolting Tech. Prods., Inc.*, the court rejected the argument that "only the direct, immediate victim of an alleged violation ever has RICO standing . . . particularly in view of the Supreme Court's admonition that the 'infinite variety of claims' defies resolution by a single black-letter rule." 1997 WL 83766, at *10 (E.D. Pa. Feb. 19, 1997). In so doing, the court carefully analyzed *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842 (3d Cir. 1996)—the Third Circuit authority on the indirect purchaser rule—and rejected the proposition that plaintiffs who are not "direct purchasers . . . lack[] RICO standing." *Id.* Likewise, in *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, the court held that "although RICO jurisprudence prioritizes directness, . . . that ***does not mean*** every RICO case should follow a 'bright-line' rule precluding indirect purchasers from suing antitrust violators." 2022 WL 3155035, at *12, n.3 (S.D. Fla. July 21, 2022) (emphasis added), *report and recommendation adopted*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022).[3]

---

[3] In *MSP Recovery*, the court dismissed the RICO claims for lack of proximate cause, but a substantial ground for difference of opinion can be established when another court merely "implies a different interpretation" of the relevant question, even if it does not resolve the issue. *T.P. by & through S.P. v. Walt Disney Parks & Resorts U.S., Inc.*, 445 F. Supp. 3d 665, 670 (C.D. Cal. 2020). And, of course, all the preceding cases clearly did resolve the relevant issue.

9

To the relevant question—might "fair-minded jurists . . . reach contradictory conclusions" on the application of the indirect purchaser rule to RICO, *Reese*, 643 F.3d at 688—this chorus of authority responds with an emphatic "yes."

### B. The Supreme Court has repeatedly refused to graft onto RICO limiting doctrines developed in other areas of law, particularly antitrust.

The decisions above are firmly rooted in the text of RICO and Supreme Court precedent interpreting it. For starters, nothing in the language of the RICO statute requires a direct purchase for standing to sue. To the contrary, civil RICO grants a private right of action to "***any person*** injured in his business or property by reason of a violation of" prohibited activities. 18 U.S.C. § 1964(c) (emphasis added). The Supreme Court has consistently warned against both extra-textual statutory limitations, *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020) ("[T]he same judicial humility that requires us to refrain from adding to statutes requires us to refrain from diminishing them."), and wholesale migration of jurisprudence from one area of law to another, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174-78 (2009) ("[W]e must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 135 (2014) (rejecting attempts to import antitrust principles to Lanham Act case because "potential difficulty in ascertaining and apportioning damages is not . . . an independent basis for denying

10

standing"). The Court confirmed these principles specifically in the RICO context, rejecting the invitation to "adopt narrowing constructions of RICO" that would limit the "breadth of coverage" suggested by the statute's "any person" language. *Bridge*, 553 U.S. at 649, 660.

The textual overlap between the Clayton Act and RICO does not override these concerns. The Supreme Court has repeatedly rejected efforts to graft onto RICO "atextual hurdles" derived from other bodies of law, especially antitrust. *Id.* at 660 ("refus[ing] to adopt narrowing constructions of RICO" not present in "RICO's text"); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) (finding it "inappropriate" to transplant antitrust injury requirements onto RICO); *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269 n.15 (1992) ("'[A]ntitrust injury' has no analogue in the RICO setting"). Just last month, the Supreme Court again refused to adopt antitrust precedent to interpret RICO because, as the Court reaffirmed, RICO and the Clayton Act "are not interchangeable." *Horn*, 145 S. Ct. at 943.

In *Horn*, the Supreme Court reaffirmed another critical proposition as well: for RICO, "directness" considerations are controlled by the proximate causation test, not the bright-line indirect purchaser rule. *Id.* at 945; *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9-10 (2010); *Bridge*, 553 U.S. at 659-60; *Anza v. Ideal Steel*, 547 U.S. 451, 457 (2006); *Holmes*, 503 U.S. at 268. Under the proximate

11

cause test, courts assess "(1) whether there are more direct victims . . . who can be counted on to vindicate the law," as well as the "difficulty" in (2) "ascertaining" and (3) "apportioning damages to obviate the risk of multiple recoveries." *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002); *Bridge*, 553 U.S. at 654. This addresses many of the same considerations and does much of the same work as antitrust's indirect purchaser rule. *Illinois Brick*, 431 U.S. at 746. But in RICO, unlike in antitrust, the "direct-relation" analysis is a "flexible" one "that does not lend itself to 'a black-letter rule that will dictate the result in every case,'" *Bridge*, 553 U.S. at 654, in part because it focuses not on the formalistic relationship between the parties, but on the "relation between the injury asserted and the injurious conduct alleged." *Horn*, 145 S. Ct. at 945.

It makes sense that RICO and antitrust laws would approach directness differently. Antitrust cases will almost invariably manifest in injury to an immediate "purchaser" with standing to sue—that is the nature of a restraint of trade. RICO, in contrast, embraces a wide variety of misconduct, much of which has nothing to do with purchases. 18 U.S.C. § 1961(1). Given this variety, the most directly injured RICO victim may not be the direct purchaser, or even a purchaser at all, making an indirect purchaser rule illogical and unjust. That is particularly true where, as here, Plaintiffs are the intended and *only* directly-injured victims of the fraudulent scheme. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales*

12

*Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 966 (N.D. Cal. 2018)

(Consumers are "the ones who . . overpaid" for over-polluting vehicles "as a result

of Defendants' fraud" and are therefore "in the best position to sue to recover those

economic losses."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*

*Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 906 (N.D. Cal. 2018).

### C. Support for the other side is "equivoca[l]."

There are, admittedly, a number of circuit court decisions that arguably

support the application of *Illinois Brick* to RICO, but, as the District Court

observed, they "were not without equivocation." Ex. 2 at 7. In one of the four

appellate cases, *McCarthy*, 80 F.3d 842, the plaintiffs did not even challenge the

application of the indirect purchaser rule to RICO, and a district court in that

circuit later dismissed the indirect purchaser analysis as "dicta" in clear tension

with *Holmes*, *J & M Turner*, 1997 WL 83766, at *10. Two other cases did not

involve purchase transactions at all. *Carter v. Berger*, 777 F.2d 1173 (7th Cir.

1985) (taxpayer action); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir.

2004) (wage-related RICO claims). And in the fourth case, the Sixth Circuit

followed *Trollinger* only begrudgingly, concluding that, in vehicle emissions-fraud

litigation, the "bright-line indirect purchaser rule . . . immunizes major

manufacturers" from RICO liability and is "unsupported by sensible principles."

*Fenner v. Gen. Motors, LLC*, 113 F.4th 585, 604 n.6 (6th Cir. 2024).

13

Perhaps most importantly, most of these decisions predate *Holmes*'
announcement that, in RICO, directness is analyzed only through common law
proximate causation principles, 503 U.S. at 268; all but one predate *Bridge*'s
explanation that RICO's directness test is a "flexible concept that does not lend
itself to "'a black-letter rule'" like the indirect purchaser rule, 553 U.S. at 654; and
all of them predate *Horn*'s reminder that RICO and the Clayton Act "are not
interchangeable," 145 S. Ct. at 943. To be sure, each of the circuit court cases
contains language that, in isolation, supports the District Court's conclusion, but
they can hardly be read to erase any reasonable dissent—particularly considering
the significant authority going in the other direction.

* * *

As the Fourth Circuit put it recently, the application of the indirect purchaser
rule to RICO is a "complicated question on which courts have taken diverging
views." *MSP Recovery*, 130 F.4th at 110 n.11. These diverging opinions of fair-
minded jurists confirm there are, at a minimum, substantial grounds for
disagreement. This statutory requirement is met.

### III. Prompt review may materially advance the termination of this action.

Resolution of the issue presented here may "materially advance" the
litigation. *Reese*, 643 F.3d at 688. That is enough. As this Court explained, "neither
§ 1292(b)'s literal text nor controlling precedent requires that the interlocutory

14

appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688; *see also ICTSI Oregon*, 22 F.4th at 1131; *In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 267752, at *2 (N.D. Ill. May 17, 1996), *rev'd on other grounds*, 123 F.3d 599 (7th Cir. 1997) ("[A] question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants."). A prompt appeal of RICO standing satisfies the statute's intentionally flexible standard in several independent ways. *See Reese*, 643 F.3d at 688.

> ### A. Absent appeal, the nationwide class will be splintered into suits across the country that will change and delay the litigation.

The federal RICO claim "is the *only* claim providing a basis for a nationwide class." Ex. 2 at 5. Without it, what was once a fifty-state case becomes a one-state case, and the prospect of treble damages is eliminated. As the District Court observed, "[t]hese potential changes to the scope of the litigation and remedy available to Plaintiffs could drastically reshape subsequent proceedings, including class certification and trial." *Id.* This alone is almost certain to "materially affect the outcome of this litigation." *Id.*

Absent appeal, moreover, there can be little doubt that plaintiffs in the other 49 states will file to preserve their claims in courts around the country—a result that would also profoundly impact this litigation. Experience tells us they will get transferred, likely via 28 U.S.C. §§ 1404 or 1407, leading to inevitable

complications and delays. An interlocutory appeal, on the other hand, preserves *American Pipe* tolling and, if successful, will bring all the Plaintiffs back under the same roof, on the same schedule, before the same judge, in the same case. This would result in faster, more efficient litigation.

> **B.     An early appeal will reduce the potential for a costly second trial.**

Without interlocutory review, the District Court may be forced to hold a second trial, years from now, to address all the RICO elements that do not overlap with the remaining state claims (in addition to nationwide damages). Prompt appeal, on the other hand, will avoid all of this and thus "materially advance" this litigation, as courts routinely recognize in similar circumstances. *See, e.g.*, *Elorreaga v. Rockwell Automation, Inc.*, 2023 WL 4116623, at *2 (N.D. Cal. June 16, 2023), *petition granted*, No. 23-80056 (9th Cir. Jul. 24, 2023) (interlocutory appeal would "materially advance" the litigation because it would avoid retrial if Ninth Circuit later reversed); *E.E.O.C. v. Bass Pro Outdoor World, LLC*, 2014 WL 6453606, at *3 (S.D. Tex. Nov. 17, 2014), *petition granted*, No. 14-90044 (5th Cir. Feb. 10, 2014) ("[A]n immediate appeal would certainly advance the termination of the litigation if this Court's original ruling is reversed on appeal."); *In re Pac. Homes*, 456 F. Supp. 851, 866 (C.D. Cal. 1978), *petition granted*, 611 F.2d 1253 (9th Cir. 1980) (same).

16

The District Court managing this litigation agrees. It concluded that the "most efficient course would be to adjudicate" all claims together and that obtaining finality on this issue now "would conserve judicial resources, conserve party resources, and simplify case management." Ex. 2 at 9. This is undoubtedly true.

Cummins' alternative argument for dismissing the RICO claim does not change the analysis. According to Cummins, Plaintiffs did not adequately plead RICO's "common purpose" element because "Plaintiffs never allege that FCA acted intentionally or knowingly with regard to the presence of the alleged defeat devices." Dkt. 104 at 10. Although the Court "offered no opinion on [the] merit" of those specific arguments, Ex. 2 at 9, it came very close in ruling that Plaintiffs had "plausibly alleged FCA's and Cummins' knowledge of the defeat device prior to selling the Class Trucks to consumers," Ex. 1 at 19. Regardless, "conjecture" about alternative arguments "is beside the point since Section 1292(b) only requires that the interlocutory appeal 'may materially advance' the litigation." Ex. 2 at 9.

## C. Certainty regarding the RICO claim will facilitate settlement—the most likely outcome for any civil litigation.

Equally as important is an interlocutory appeal's potential to materially advance settlement—the way in which most litigation actually terminates. As the Seventh Circuit explained, "uncertainty about the status of [an important] claim may delay settlement (almost all class actions are settled rather than tried), and by

3230632.4

doing so further protract the litigation. That is enough to satisfy the 'may materially advance' clause of section 1292(b)." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Courts in the Ninth Circuit regularly adopt this common-sense approach. *See, e.g.*, *Rollins*, 2014 WL 6693891, at *4 (certifying for appeal because "certainty" around an important claim could "encourage a negotiated settlement, which would not just materially but completely advance the termination of this litigation").[4]

The reasoning is particularly persuasive here because the RICO claim offers the only path to recovery for the vast majority of proposed class members, trebles damages for everyone, and therefore reflects the "bulk of the damages sought." *S.E.C. v. Mercury Interactive, LLC*, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011). This consideration, too, independently satisfies the "material advancement" requirement.

---

[4] *See also e.g.*, *Finder v. Leprino Foods Co.*, 2016 WL 4095833, at *5 (E.D. Cal. Aug. 1, 2016), *petition granted*, No. 16-80104 (9th Cir. Oct. 19, 2016) ("[A]n immediate appeal could advance termination of litigation by increasing odds of settlement, especially for class action cases, where litigants would be able to more accurately predict their odds of success, scope of potential liability, and a fair estimate of the case's value."); *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989, at *3 (C.D. Cal. Apr. 9, 2015), *petition granted*, No. 15-80069 (9th Cir. Jul. 30, 2015) (finding increased chance of settlement "may materially advance the case's ultimate termination"); *In re N. Dist. of California "Dalkon Shield" IUD Prods. Liab. Litig.*, 526 F. Supp. 887, 919 (N.D. Cal. 1981), *petition granted*, 693 F.2d 847 (9th Cir. 1982) (appeal may materially advance termination where "immediate resolution . . . will lead to increased settlements and save thousands of hours of court time").

18

All three criteria are met.

## CONCLUSION

The Dismissal Order checks all the boxes of § 1292(b) and presents an important legal issue ripe for review. Plaintiffs-Petitioners respectfully request that the Court certify it for interlocutory appeal.

Dated: May 12, 2025

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Kevin Budner*
   Kevin Budner

Elizabeth J. Cabraser (SBN 083151)
Kevin Budner (SBN 287271)
Phong-Chau G. Nguyen (SBN 286789)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008
ecabraser@lchb.com
kbudner@lchb.com
pgnguyen@lchb.com

David S. Stellings
Miranda K. Litwak
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
dstellings@lchb.com
mlitwak@lchb.com

19

Roland Tellis (SBN 186269)
David B. Fernandes, Jr. (SBN 280944)
Adam M. Tamburelli (SBN 301902)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com
atamburelli@baronbudd.com

Steve W. Berman
Garth D. Wojtanowicz
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
garthw@hbsslaw.com

James E. Cecchi, pro hac vice
CARELLA, BYRNE, CECCHI, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

Christopher A. Seeger, pro hac vice
Christopher Ayers, pro hac vice
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
cseeger@seegerweiss.com
cayers@seegerweiss.com

20

Joseph F. Rice
Ann K. Ritter
Lance V. Oliver, pro hac vice
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000
Fax: (843) 216-9450
jrice@motleyrice.com
aritter@motleyrice.com
loliver@motleyrice.com

Rosemary M. Rivas (SBN 209147)
Amy M. Zeman (SBN 273100)
Rosanne L. Mah (SBN 242628)
GIBBS MURA LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
amz@classlawgroup.com
rlm@classlawgroup.com

*Attorneys for Plaintiffs-Petitioners*

21

3230632.4

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing petition is in compliance with Federal Rule of Appellate Procedure ("Rule") 5 and because it contains 4,594 words, as determined by Microsoft Word 2016, including the headings and footnotes, and excluding the parts of the petition exempted by Rule 32(f). The petition also complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because the text appears in 14-point Times New Roman, a proportionally-spaced serif typeface.

Dated: May 12, 2025          By:  */s/ Kevin Budner*_____

# CERTIFICATE OF SERVICE

I, hereby certify that on May 12, 2025, I caused the following to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system:

1. Petition for Interlocutory Appeal of the District Court's Order Granting Motion to Dismiss Pursuant to 28 U.S.C. § 1292(b);

2. Exhibit 1: District Court's February 11, 2025 Order Granting in Part and Denying in Part Motions to Dismiss;

3. Exhibit 2: District Court's May 1, 2025 Order Certifying Question for Interlocutory Appeal; and

4. Exhibit 3: Transcript of Proceedings of May 1, 2025 Motion to Certify for Interlocutory Appeal Hearing.

On May 12, 2025, these documents were also served via electronic mail on the following recipients:

Alan Schoenfeld
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007

Joshua H. Lerner
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, California 94111

Ronald Machen
ronald.machen@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, District of Columbia
20037

Gregory Paul Gilmer
greg.gilmer@kleinthomaslaw.com
Kristyn Wong
kristyn.wong@kleinthomaslaw.com
Klein Thomas Lee & Fresard
1920 Main Street, Suite 230
Irvine, CA 92614

23

Thomas Louis Azar, Jr.
tom.azar@kleinthomaslaw.com
Stephen A D'Aunoy
steve.daunoy@kleinthomaslaw.com
Klein Thomas Lee & Fresard
100 N. Broadway
Suite 1600
St. Louis, MO 63102

I declare under penalty of perjury that the foregoing is true and correct.  Executed

in San Francisco, California on May 12, 2025.

Dated:  May 12, 2025              By:  */s/ Kevin Budner*

                                 *Attorney for Plaintiffs-Petitioner*

24